No. 26-1910

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

Jason Crady, and his wife Nicole Crady;
Nicole Crady,

*Plaintiffs-Appellees*,

*v.*

3M Company, also known as
Minnesota Mining and Manufacturing Company,

*Defendant-Appellant*,

AGC Chemicals Americas, Inc.; Allstar Fire Equipment Co.; Archroma U.S., Inc.; CB Garmet, Inc., doing business as Crewboss; Dupont De Nemours, Inc., formerly known as DowDuPont Inc.; Ed M. Feld Equipment Co., Inc.; Fire-Dex, Inc.; Fire-Dex, LLC; Globe Holding Company, LLC; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Innotex Corp; Lakeland Industries, Inc.; Leo Ellebracht Company; Lion Apparel, Inc.; Majestic Fire Apparel, Inc.; Morning Pride Manufacturing, LLC; Phenix Fire Protectors, LLC; Southern Mills, Inc., doing business as Tencate Protective Fabrics, USA; TechTrade LLC; Veridian Limited, doing business as Veridian Fire Protective Gear; W.L. Gore & Associates, Inc.; Witmer Public Safety Group, Inc., doing business as The Fire Store; Sentinel Emergency Solutions, LLC; Conway Shield, Inc.

*Defendants.*

On Appeal from the
United States District Court for the Eastern District of Missouri
Case No. 4:25-cv-1394-JAR | Hon. John A. Ross

# OPENING BRIEF OF APPELLANT 3M COMPANY

Paul D. Clement
Joseph J. DeMott
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
joseph.demott@clementmurphy.com
nicholas.aquart@clementmurphy.com

Joseph E. Barakat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
JBarakat@gibsondunn.com

Lauren R. Goldman
Justine Goeke
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
LGoldman@gibsondunn.com
JGoeke@gibsondunn.com

Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 777-9326
ASteene@gibsondunn.com

*Counsel for Defendant-Appellant 3M Company*

## SUMMARY OF THE CASE

The federal-officer removal statute, 28 U.S.C. § 1442(a), guarantees a federal forum for suits against federal officers and those who assist them. To prevent plaintiffs from pleading around that protection, courts "must credit the defendants' theory of the case" at the removal stage. *Griffin v. Optum, Inc.*, 175 F.4th 897, 902 (8th Cir. 2026). This appeal arises from a failure to heed this principle.

Plaintiff Jason Crady sued 3M in state court, alleging that 3M's products, including a firefighting foam called AFFF, contained chemicals known as PFAS and made him ill. 3M removed to federal court because it manufactured AFFF for the federal government pursuant to military specifications, giving rise to a federal-contractor defense. Three months later, Mr. Crady dismissed his claims. A month after that, he filed a *new* case in state court, this time blaming unspecified "chemicals" for his illness. 3M removed again. Rather than credit 3M's plausible theory that the suit implicates 3M's federally directed production of AFFF, the district court credited Mr. Crady's assertion that it does not. That is not how section 1442 is supposed to work.

3M respectfully requests 15 minutes for oral argument.

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1(a) and Eighth Circuit Rule 26.1A, Defendant-Appellant 3M Company states that it is a publicly traded corporation that does not have any parent corporation. No publicly held corporation owns 10% or more of 3M Company's stock.

Dated: August 5, 2026

Respectfully submitted,

By: /s/ *Lauren R. Goldman*
Lauren R. Goldman

*Counsel for Defendant-Appellant*
*3M Company*

## TABLE OF CONTENTS

Page


SUMMARY OF THE CASE ..... i

CORPORATE DISCLOSURE STATEMENT ..... ii

TABLE OF AUTHORITIES ..... v

INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 5

STATEMENT OF THE ISSUES ..... 5

STATEMENT OF THE CASE ..... 6

A. PFAS and MilSpec AFFF ..... 6

B. The AFFF Multidistrict Litigation ..... 8

C. Plaintiffs' Two Suits ..... 10

D. The District Court's Remand Order ..... 18

SUMMARY OF ARGUMENT ..... 20

STANDARD OF REVIEW ..... 26

ARGUMENT ..... 26

I. 3M Satisfied Every Requirement For Federal-Officer Removal. ..... 26

A. All Agree 3M Is A "Person" Within The Meaning Of Section 1442. ..... 29

B. It Is Similarly Undisputed That 3M Acted Under Federal Authority ..... 29

C. This Suit Relates To Actions 3M Took Pursuant To Its Authority As A Federal Contractor. ..... 30

D. 3M Asserted A Colorable Federal Defense. .......................... 36

II. The District Court Imposed An Evidentiary Standard That Is Inconsistent With Section 1442. ............................................... 38

A. The District Court Improperly Credited Rebuttal Evidence Over 3M's Plausible Allegations. .......................... 39

B. The District Court Improperly Resolved Factual Disputes Implicating The Merits Of 3M's Federal Defense. ......................................................................... 45

III. Plaintiffs' Purported Disclaimer Cannot Sever The Connection To MilSpec AFFF. ...................................................... 52

A. Plaintiffs' Litigation Statements Do Not Amount To A Disclaimer Of AFFF-Based Relief. ....................................... 53

B. The Purported Disclaimer Impermissibly Contradicts 3M's Theory of Removal. ....................................................... 56

C. The District Court's Contrary Ruling Rests On Discredited And Inapposite Caselaw. .................................. 64

CONCLUSION ......................................................................... 69

CERTIFICATE OF COMPLIANCE ...................................................... 70

CERTIFICATE OF SERVICE................................................................ 71

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021) .......................................................22, 28

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2021 WL 755083 (J.P.M.L. Feb. 4, 2021)...........................................10

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018)...............................................8, 9

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020)..................................................47, 63, 66

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)...........................................................................37

*BP P.L.C. v. Mayor of Baltimore*,
593 U.S. 230 (2021).........................................................................5, 29

*Chevron USA Inc. v. Plaquemines Parish*,
146 S. Ct. 1052 (2026)................... 1, 3, 6, 20, 22, 28, 30, 31, 42, 58, 59

*Christopherson v. Bushner*,
33 F.4th 495 (8th Cir. 2022) ...............................................................9

*Copeland v. 3M Co.*,
2023 WL 185983 (D. Minn. Jan. 13, 2023) ........................................41

*Czerno v. Gen. Elec. Co.*,
--- F.4th ----, 2026 WL 2030449 (1st Cir. July 14, 2026) ....................34

*Dart Cherokee Basin Operating Co. v. Owens*,
574 U.S. 81 (2014)..........................................................28, 40, 41, 43

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006)...........................................................27

*Ellenburg v. Spartan Motors Chassis, Inc.*,
519 F.3d 192 (4th Cir. 2008)............................................................41

*First Bank of Marietta v. Hogge*,
161 F.3d 506 (8th Cir. 1998)............................................................50

*Gen. Motors Corp. v. Harry Brown's, LLC*,
563 F.3d 312 (8th Cir. 2009)............................................................51

*Georgia v. Meadows*,
88 F.4th 1331 (11th Cir. 2023) .........................................................43

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024)...........................................35, 40, 60, 64

*Griffin v. Optum, Inc.*,
175 F.4th 897 (8th Cir. 2026) ..........................1, 3, 5, 6, 25, 26, 27, 28,
30, 36, 39, 59, 60, 61, 67

*Arkansas ex rel. Griffin v. Optum, Inc.*,
2024 WL 6991679 (E.D. Ark. Dec. 31, 2024) .....................................60

*West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
140 F.4th 188 (4th Cir. 2025) ...................................................55, 60

*InfoDeli, LLC v. W. Robidoux, Inc.*,
136 F.4th 792 (8th Cir. 2025) ..........................................................54

*Jacks v. Meridian Res. Co.*,
701 F.3d 1224 (8th Cir. 2012)...........................................................29

*Jalili v. 3M Co.*,
2022 WL 3044799 (D. Minn. Aug. 2, 2022)........................................42

*Jefferson County v. Acker*,
527 U.S. 423 (1999).........................................................36, 43, 44, 46

*Kelleher v. A.W. Chesterton Co.*,
2015 WL 7422756 (S.D. Ill. Nov. 23, 2015)........................................65

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 45, 46

*Magnin v. Teledyne Cont'l Motors*,
91 F.3d 1424 (11th Cir. 1996) .......... 36

*Maine v. 3M Co., Inc.*,
159 F.4th 129 (1st Cir. 2025) .......... 4, 6, 25, 34, 44, 47, 57, 61, 62, 63, 67

*Maryland v. 3M Co.*,
130 F.4th 380 (4th Cir. 2025) .......... 4, 6, 22, 25, 34, 35, 39, 44, 47, 52, 57, 61, 62, 68

*McCostlin v. Monsanto Co.*,
718 S.W.3d 435 (Mo. Ct. App. 2025) .......... 47

*Mesa v. California*,
489 U.S. 121 (1989) .......... 36

*Morgan Distrib. Co. v. Unidynamic Corp.*,
868 F.2d 992 (8th Cir. 1989) .......... 54

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) .......... 46

*New Hampshire v. 3M Co.*,
132 F.4th 556 (1st Cir. 2025) .......... 65

*New Hampshire v. 3M Co.*,
665 F. Supp. 3d 215 (D.N.H. 2023) .......... 65

*Osborn v. Haley*,
549 U.S. 225 (2007) .......... 28

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) .......... 46

*Illinois ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) .......... 26, 66, 67, 68

*Russello v. United States*,
464 U.S. 16 (1983) .......... 43

*Sexton v. Beaudreaux*,
585 U.S. 961 (2018) .......... 41

*Thomas v. United Steelworkers Local 1938*,
743 F.3d 1134 (8th Cir. 2014) .......... 24, 54, 55, 56

*Town of Pine Hill v. 3M Co.*,
--- F.4th ----, 2026 WL 2178967
(11th Cir. July 29, 2026) .......... 4, 6, 25, 34, 43, 47, 57, 62, 63, 64

*United States v. Todd*,
245 F.3d 691 (8th Cir. 2001) .......... 36

*USPS Bd. of Govs. v. Aikens*,
460 U.S. 711 (1983) .......... 51

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) .......... 27, 29, 30

*Willingham v. Morgan*,
395 U.S. 402 (1969) .......... 3, 4, 6, 22, 25, 27, 34, 35, 44, 45, 49, 57

*Wingate v. Gage Cnty. Sch. Dist.*,
528 F.3d 1074 (8th Cir. 2008) .......... 51

*Ohio ex rel. Yost v. Ascent Health Servs., LLC*,
165 F.4th 999 (6th Cir. 2026) .......... 44, 60, 64

**Statutes and Rules**

1 U.S.C. § 1 .......... 29

28 U.S.C. § 1291 .......... 5

28 U.S.C. § 1442 .......... 1, 5, 6, 11, 20, 27, 28, 29, 36,
38, 39, 40, 44, 46, 49, 57, 58, 63

28 U.S.C. § 1446 .......... 40, 42, 43

28 U.S.C. § 1447 .......... 5, 42

28 U.S.C. § 1455 .......... 43

Fed. R. Civ. P. 8 .......... 40

Fed. R. Civ. P. 11 .......... 42

Fed. R. Civ. P. 15 .......... 54

48 C.F.R. § 9.203(a) .......... 7

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) .......... 53

Compl., *Plaquemines Parish v. Total Petrochemicals & Refining USA, Inc.*, No. 2:18-cv-05256 (E.D. La. May 23, 2018), Dkt. 1-8 .......... 58

MIL-PRF-24385F(4) (2020) .......... 8

Notice of Removal, *Alvarez v. 3M Co.*, No. 2:25-cv-02746-RMG (D.S.C. Apr. 1, 2025), Dkt. 1 .......... 12

Notice of Removal, *Plaquemines Parish v. Total Petrochemicals & Refining USA, Inc.*, No. 2:18-cv-05256 (E.D. La. May 23, 2018), Dkt. 1 .......... 58

Plaquemines Parish Br., *Chevron USA Inc. v. Plaquemines Parish*, No. 24-813 (U.S. Nov. 13, 2025) .......... 59

## INTRODUCTION

The district court permitted plaintiffs to evade federal jurisdiction through artful pleading and a purported disclaimer of relief for any harm caused by defendant 3M's federally directed conduct. This Court recently rejected a similar gambit, *see Griffin v. Optum, Inc.*, 175 F.4th 897, 904–05 (8th Cir. 2026), and should likewise reverse the decision below.

Plaintiff Jason Crady, along with other firefighters, previously sued 3M Company in state court, claiming injury stemming from alleged exposure to per- and polyfluoroalkyl substances ("PFAS") in 3M products. One of those products was aqueous film-forming foam ("AFFF"), a firefighting product 3M supplied to the U.S. military and others pursuant to rigorous military specifications ("MilSpec"). 3M removed the case to federal court under 28 U.S.C. § 1442(a)(1), which permits "a person 'acting under' a federal officer" to remove any suit "'for or relating to'" that federally directed conduct, so long as the defendant "assert[s] 'a colorable federal defense.'" *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1057–58 (2026). No plaintiff

disputed federal jurisdiction. But shortly after 3M removed, Mr. Crady voluntarily dismissed his claims.

It soon became clear that the dismissal did not reflect a decision to forgo litigation against 3M, as Mr. Crady promptly filed another state-court case—this lawsuit—with Mr. Crady's wife as co-plaintiff. As before, plaintiffs seek to hold 3M liable for Mr. Crady's alleged exposure to chemicals in 3M-manufactured products during his firefighter career. This time around, though, plaintiffs' complaint carefully avoids identifying any of the chemicals that allegedly harmed Mr. Crady.

3M again removed Mr. Crady's case to federal court under the federal-officer removal statute. 3M's notice of removal alleged, based in part on Mr. Crady's prior complaint, that the chemicals at issue are PFAS and that at least one plausible source of Mr. Crady's PFAS exposure was MilSpec AFFF. The notice also alleged that any PFAS in Mr. Crady's body from MilSpec AFFF was indistinguishable from PFAS from other sources. And the notice alleged facts supporting each element of 3M's federal government-contractor defense. Under the longstanding and recently reaffirmed rule that courts must

"credit plausible factual allegations by the removing party," *Plaquemines*, 146 S. Ct. at 1061, nothing more was required of 3M.

The district court nevertheless granted plaintiffs' motion to remand. The remand order rested on two principal grounds, both stemming from a single error: the district court's failure to "credit" 3M's "theory of the case" "[i]n evaluating the propriety of removal." *Griffin*, 175 F.4th at 902.

*First*, instead of crediting the plausible allegations in 3M's notice of removal, the district court credited self-serving testimony from Mr. Crady's deposition (taken before discovery and at his lawyer's insistence), denying exposure to AFFF. And the court imposed on 3M an evidentiary burden to rebut that testimony at the removal stage. This evidentiary requirement, however, is flatly inconsistent with the Supreme Court's federal-officer caselaw, which requires only plausible allegations. Congress created (and has repeatedly expanded) federal-officer removal jurisdiction precisely so that defendants could have merits questions like causation "tried in a federal court" to a federal factfinder, not resolved at the removal stage based on incomplete evidence. *Willingham v. Morgan*, 395 U.S. 402, 407

(1969). In any event, there *was* record evidence that Mr. Crady was exposed to AFFF, including testimony elicited at the deposition, which the district court simply ignored.

*Second*, the district court credited what plaintiffs described as a "disclaimer" of any claims stemming from AFFF—in truth, a series of denials that Mr. Crady was ever *exposed* to AFFF. But plaintiffs never disclaimed relief for AFFF exposure in their operative complaint. And even if they had, such a disclaimer cannot defeat federal jurisdiction—as the First, Fourth, and Eleventh Circuits have held in PFAS cases. *See Town of Pine Hill v. 3M Co.*, --- F.4th ----, 2026 WL 2178967, at *4–5 (11th Cir. July 29, 2026); *Maine v. 3M Co., Inc.*, 159 F.4th 129, 138–40 (1st Cir. 2025); *Maryland v. 3M Co.*, 130 F.4th 380, 389–91 (4th Cir. 2025). Ultimately, *some* factfinder (after discovery) will need to perform the difficult task of distinguishing between AFFF and non-AFFF sources of PFAS exposure and resolve to what extent (if any) exposure to AFFF contributed to Mr. Crady's alleged injury. The federal-officer removal statute requires the ultimate trier of fact in "a federal, not a state, court" to perform that task. *Willingham*, 395 U.S. at 409. Here, as in *Griffin*, "no

disclaimer, however worded, can help [plaintiffs] avoid" this requirement. 175 F.4th at 904.

Because 3M established federal jurisdiction, this Court should reverse.

## JURISDICTIONAL STATEMENT

This appeal arises from 3M's removal of a case from state court to federal court. The district court had jurisdiction under 28 U.S.C. § 1442(a)(1). This Court has jurisdiction over the "final district court order[] . . . under 28 U.S.C. § 1291." *BP P.L.C. v. Mayor of Baltimore*, 593 U.S. 230, 239 (2021). Although most remand orders are not appealable, "an order remanding a case to the State court from which it was removed" pursuant to section 1442(a)(1) "shall be reviewable by appeal." 28 U.S.C. § 1447(d). The district court's remand order was entered on April 7, 2026, and 3M timely noticed its appeal on May 6, 2026. App. 1655–75; R. Docs. 145–146.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by refusing to credit 3M's plausible allegations in support of federal-officer jurisdiction, instead resolving disputed factual issues against 3M at the removal stage

based on an underdeveloped evidentiary record.

28 U.S.C. § 1442; *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026); *Willingham v. Morgan*, 395 U.S. 402 (1969); *Griffin v. Optum, Inc.*, 175 F.4th 897 (8th Cir. 2026); *Maine v. 3M Co.*, 159 F.4th 129 (1st Cir. 2025).

2. When a defendant has plausibly alleged that any injury allegedly caused by its non-federal conduct is indivisible from harm caused by its federal conduct, whether a plaintiff can defeat federal-officer removal by disavowing in its remand-motion papers the claims and allegations giving rise to the defendant's government-contractor defense.

*Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026); *Griffin v. Optum, Inc.*, 175 F.4th 897 (8th Cir. 2026); *Town of Pine Hill v. 3M Co.*, --- F.4th ----, 2026 WL 2178967 (11th Cir. July 29, 2026); *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025).

## STATEMENT OF THE CASE

### A. PFAS and MilSpec AFFF

PFAS are chemicals used in an array of products, including industrial and consumer goods. PFAS are also key ingredients in

AFFF, a firefighting foam widely used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires. App. 30–32; R. Doc. 1 ¶¶ 27, 29. In settings where "fuel fires are inevitable and potentially devastating," AFFF is a "mission critical product that saves lives and protects assets." App. 30, 42; R. Doc. 1 ¶¶ 27, 50 (cleaned up).

Although the military developed AFFF, it enlisted private chemical manufacturers (including 3M) to maintain a sufficient supply. App. 35–36; R. Doc. 1 ¶ 39. The military developed detailed specifications that it requires AFFF manufacturers to follow. App. 31, 36; R. Doc. 1 ¶¶ 28, 40. Manufacturers must adhere to rigorous inspection and testing procedures to "assure supplies . . . conform to [the] prescribed requirements." U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 3 (Nov. 21, 1969); *see* App. 31; R. Doc. 1 ¶ 28 n.9. The military carefully tests AFFF products for compliance with the MilSpec, after which it adds approved products to the "Qualified Products List." App. 31; R. Doc. 1 ¶ 28; *see* 48 C.F.R. § 9.203(a).

The AFFF MilSpec requires the use of PFAS. Until recently, the specifications expressly mandated that any AFFF produced for the U.S. military contain "fluorocarbon surfactants," a class of PFAS. App. 31; R. Doc. 1 ¶ 29. While the AFFF MilSpec no longer identifies PFAS by name, it still effectively requires the presence of PFAS: There is currently no other chemical that can satisfy the military's specific criteria. App. 31–32; R. Doc. 1 ¶ 29 (citing MIL-PRF-24385F(4) § 6.6 (2020)).

3M manufactured and sold MilSpec AFFF to the federal government for over thirty years. App. 32; R. Doc. 1 ¶ 30. 3M's MilSpec AFFF products have also been used by firefighters nationwide, including in Missouri. App. 23; R. Doc. 1 ¶ 2.

### B. The AFFF Multidistrict Litigation

In recent years, various plaintiffs—including States, public water providers, and private individuals—have brought an array of suits against AFFF manufacturers. Some of the suits allege that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS compounds "into local groundwater and contaminated drinking water supplies." *In re*

*Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Others allege "personal injuries" based on "direct exposure to AFFF" when discharged. App. 70; R. Doc. 1-2, at 2.

The Judicial Panel on Multidistrict Litigation ("JPML") centralized these AFFF actions into a single multidistrict litigation ("MDL") in the U.S. District Court for the District of South Carolina. *Aqueous Film-Forming Foams Prods.*, 357 F. Supp. 3d at 1396. The JPML concluded that consolidation would "promote the just and efficient conduct of this litigation." *Id.* at 1394. In part, this is because the JPML anticipated that "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.* The federal government-contractor defense immunizes government contractors from liability under state law when they produce equipment for the U.S. military pursuant to "reasonably precise specifications" issued by the government. *Christopherson v. Bushner*, 33 F.4th 495, 503 (8th Cir. 2022). Manufacturers in the MDL, 3M included, are asserting that defense based on their production of MilSpec AFFF for the U.S. Department of Defense.

Today, the AFFF MDL contains thousands of personal-injury cases brought by firefighters and others exposed to AFFF. Those plaintiffs allege that their exposure to PFAS when using AFFF "to extinguish fires caused [them] injury." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *2 (J.P.M.L. Feb. 4, 2021). Some further allege they were exposed to PFAS in their "turn-out gear" (or "bunker gear"), the fire-protective outfits worn by fire-fighters. App. 70; R. Doc. 1-2, at 2.

### C. Plaintiffs' Two Suits

Plaintiff Jason Crady has worked as an emergency medical technician, paramedic, and firefighter in the St. Louis area since 2005. App. 26; R. Doc. 1 ¶ 10; App. 401; R. Doc. 8 ¶ 12. In March 2024, Mr. Crady was diagnosed with thyroid cancer. App. 400; R. Doc. 8 ¶ 9.

In January 2025, Mr. Crady and other firefighters sued 3M in South Carolina state court for harm allegedly "resulting from exposure to [PFAS] . . . manufactured" by 3M and other companies. App. 82; R. Doc. 1-3 ¶ 1. According to the complaint, "[Mr.] Crady regularly used . . . Class B [firefighting] foams and bunker gear

containing PFAS in training and to extinguish fires during his working career" as a firefighter. App. 90; R. Doc. 1-3 ¶ 34. The complaint maintained that 3M manufactured and sold these "Class B foams"—the "most common" example of which was "AFFF"—to "fire departments" nationwide. App. 95, 129, 137; R. Doc. 1-3 ¶¶ 56, 174, 206. The complaint alleged that Mr. Crady "was diagnosed with Thyroid Cancer as a result of exposure to [3M's] products." App. 90; R. Doc. 1-3 ¶ 34. And the complaint asserted claims for negligence and strict liability based on 3M's allegedly defective design and alleged failure to warn about the risks of its PFAS-containing products. App. 174–90; R. Doc. 1-3 ¶¶ 314–91.

3M removed the state-court action directly to the MDL under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). The statute permits a private party with a federal defense to remove a lawsuit "for or relating to" conduct taken while "acting under" the federal government. *Id.* 3M's notice of removal asserted that the government-contractor defense shields 3M from liability under state law "for its design and manufacture of MilSpec AFFF" and that 3M is "entitled . . . to have its federal defense adjudicated in a federal

forum." Notice of Removal ¶ 3, *Alvarez v. 3M Co.*, No. 2:25-cv-02746-RMG (D.S.C. Apr. 1, 2025), Dkt. 1. The plaintiffs did not object to removal. App. 24; R. Doc. 1 ¶ 5.

Six months after those plaintiffs filed their lawsuit and a little more than three months after the case was removed to federal court, Mr. Crady voluntarily dismissed his claims against 3M. App. 25; R. Doc. 1 ¶ 8; App. 207–09; R. Doc. 1-4. The remainder of the case involving Mr. Crady's fellow firefighters remains pending in the MDL.

Mr. Crady's voluntary dismissal did not reflect any reluctance to litigate his claims, at least not in state court. A month later, Mr. Crady—represented by one of the same firms and attorneys as before—filed this lawsuit against 3M and other PFAS manufacturers in Missouri state court, naming Mr. Crady's wife, Nicole Crady, as a co-plaintiff. App. 46; R. Doc. 1-1 (complaint); App. 25; R. Doc. 1 ¶ 6 (noting attorney overlap).

Again, the complaint alleges that Mr. Crady was "expos[ed] to cancer-causing chemicals in products, gear, and/or equipment . . . manufactured" by 3M, including "cancer causing chemicals included in firefighting protective gear" and other "equipment or Products."

App. 400–01; R. Doc. 8 ¶¶ 9, 10, 13. Again, this exposure allegedly "caused or contributed to [] his thyroid cancer." App. 400; R. Doc. 8 ¶ 9. And again, the complaint asserts defective-design and failure-to-warn claims against 3M. App. 401–13; R. Doc. 8 ¶¶ 15–70. The new complaint, however, omits some details that were in the original complaint and does not expressly identify PFAS or any other chemical as the source of alleged exposure. And, this time, it conspicuously omitted any explicit reference to AFFF.

As before, 3M removed the case under the federal-officer removal statute, this time to the U.S. District Court for the Eastern District of Missouri. App. 22–44; R. Doc. 1. 3M explained in its notice of removal that, "[b]ased on Plaintiffs' allegations in this case and [the] prior lawsuit," "it [was] apparent that the allegedly 'cancer-causing Products' . . . include [PFAS]." App. 22; R. Doc. 1 ¶ 1. 3M also alleged that MilSpec AFFF was "one plausible source of at least some of Mr. Crady's alleged [PFAS] exposure," given that 3M's MilSpec AFFF "products have been used by firefighters . . . in and around Missouri" and "Mr. Crady's prior lawsuit referenced . . . exposure to PFAS from AFFF." App. 23; R. Doc. 1 ¶ 2.

The 20-page notice further alleged that any PFAS in Mr. Crady's body "from MilSpec AFFF [was] indistinguishable from [PFAS] from other sources." App. 33; R. Doc. 1 ¶ 32. "Mr. Crady therefore cannot 'isolate' injuries caused by non-AFFF PFAS." App. 23; R. Doc. 1 ¶ 3. Because it is at least plausible that exposure to MilSpec AFFF caused some or all of Mr. Crady's alleged injuries, 3M explained that it will invoke the federal government-contractor defense. App. 39–44; R. Doc. 1 ¶¶ 45–53. Accordingly, all requirements for federal-officer removal were satisfied. App. 23–24; R. Doc. 1 ¶¶ 3–4.

3M moved to transfer the action to the MDL and sought a stay pending the JPML's decision. App. 421–28; R. Doc. 10.

Plaintiffs opposed the transfer and separately moved to remand the case to state court. App. 665–79; R. Doc. 13. Plaintiffs stated that they were "not claiming that Mr. Crady was exposed to 3M AFFF," "[g]iven" that "there [wa]s presently no evidence" of such exposure. App. 668, 678; R. Doc. 13 ¶¶ 3, 23. And plaintiffs asserted that the contrary allegation in the original complaint was a mistake: They now say that Mr. Crady "was erroneously listed, due to law

office failure, as one of the many plaintiffs in [a] boilerplate MDL complaint." App. 668; R. Doc. 13 ¶ 4.

Plaintiffs also asked to expedite Mr. Crady's deposition. App. 1355–62; R. Doc. 81. Plaintiffs contended that an early deposition was necessary in light of Mr. Crady's "diagnosis and course of treatment." App. 1356; R. Doc. 81, at 2. In addition, they claimed an early deposition "would surely answer the seminal question of whether 3M's theory for removal and federal jurisdiction—exposure to AFFF—is plausible." *Id.* 3M "ask[ed] that, if the [c]ourt allow[ed] the deposition to occur," Mr. Crady "be ordered to produce in advance written discovery" that would allow 3M to meaningfully question Mr. Crady about the source of his alleged PFAS exposure. App. 1464; R. Doc. 92, at 3.

The district court permitted the deposition to occur but otherwise stayed the case. The court directed that the deposition take place within three weeks of its order. App. 1465; R. Doc. 92, at 4. Yet it denied 3M's request for written discovery as "excessive and impractical," reasoning that 3M would "be able to develop the evidence on [the covered] topics in discovery." App. 1464; R. Doc. 92, at

3. Instead, the court instructed plaintiffs only "to provide any readily available information regarding [Mr.] Crady's residential and employment history." App. 1464–65; R. Doc. 92, at 3–4.

During the deposition, Mr. Crady testified that he had worked in proximity to firefighting foam on several occasions. He testified, for example, that:

- He had used a firehose to discharge firefighting foam during training. App. 1497; R. Doc. 134-1, at 31:8–36:20.
- He had learned how to load foam into a truck. *Id*.
- He had responded to calls where it appeared that firefighting foam had been used. When questioned about photographs of scenes he had responded to, he could not "rule out" that firefighting foam appeared on some cars. App. 1508–12; R. Doc. 134-1, at 301:15–305:16.
- The fire department where he worked kept multiple cans of firefighting foam concentrate stocked at the firehouse and carried firefighting foam concentrate on the department's pumper truck. App. 1501–02, 1513; R. Doc. 134-1, at 35:7–36:14, 332:5–

21.[1]

Mr. Crady nevertheless maintained that he had never experienced any direct exposure to AFFF. *See*, *e.g.*, App. 1502–03; R. Doc. 134-1, at 36:15–37:3; App. 1644–45; R. Doc. 136-1, at 265:17–20, 292:1–5.

After the JPML denied transfer of the case to the MDL, the district court lifted the stay, and the parties submitted supplemental briefing on plaintiffs' motion to remand. App. 1477; R. Doc. 119-1, at 2; App. 1489–90; R. Doc. 131, at 1–2. 3M argued that the court was required to credit the notice of removal's plausible allegations and that the court should not consider plaintiffs' evidence at the removal stage. App. 1491; R. Doc. 134, at 1. But if the court were inclined to consider Mr. Crady's testimony, 3M explained that "[a]dditional discovery, including but not limited to third-party

---

[1] Additionally, Mr. Crady testified that his "[f]ire [d]epartment" performed training exercises (or "simulations") involving extinguishing jet fires at a Part 139 airport, and that the department should have "records" of those exercises. App. 1504; R. Doc. 134-1, at 10; App. 1645; R. Doc. 136-1, at 118. Part 139 airports are a category of large civilian airports that "historically have used MilSpec AFFF" for firefighting purposes, including to extinguish fuel-based fires. App. 32; R. Doc. 1 ¶ 31.

discovery and requests for records relating to Mr. Crady's training, fire response calls, and the firefighting foam products purchased, stored, and used by his employer," was necessary "to determine whether and to what extent Mr. Crady was exposed to MilSpec AFFF." App. 1492; R. Doc. 134, at 2.

### D. The District Court's Remand Order

The district court granted plaintiffs' motion to remand. First, the court held that 3M had failed to adduce "[s]ufficient . . . evidence in the record" to "support" its federal government-contractor defense. App. 1666–67; R. Doc. 145, at 12–13. Despite acknowledging that "3M need only plausibly allege the necessary facts to support a colorable defense," the district court required 3M to provide "evidence" to "substantiate" its allegations with a "degree of certainty." App. 1667; R. Doc. 145, at 13. Without commenting on 3M's request for written discovery, the court stated that all "relevant facts" were "contained in Plaintiffs' petition, 3M's notice of removal, and Crady's evidence deposition testimony." App. 1664; R. Doc. 145, at 10. Reviewing this (incomplete) record, the court credited Mr. Crady's assertion "that he ha[d] not been exposed to AFFF." App. 1667; R. Doc. 145,

at 13. The court did not comment on the evidence or allegations suggesting otherwise. Based on its assessment of the evidence, the court held that "3M ha[d] failed to establish a colorable federal defense." App. 1668; R. Doc. 145, at 14.

Next, the district court held that plaintiffs had disclaimed "relief for exposure resulting from MilSpec AFFF," and that "the case must be remanded to state court" "[i]n light of [the] disclaimer." App. 1670–71; R. Doc. 145, at 16–17. The court acknowledged that it was "not immediately clear whether [plaintiffs] ha[d] filed an express waiver of their rights to any potential claims arising out of exposure to AFFF." App. 1668; R. Doc. 145, at 14. But it treated "Plaintiffs' statement that they ha[d] effectively disclaimed"—because they were "not claiming AFFF exposure"—as "sufficient to serve as an express disclaimer." App. 1669; R. Doc. 145, at 15. And because 3M's government-contractor defense "concerns" 3M's production of MilSpec AFFF, the court determined that "Plaintiffs' disclaimer remove[s] the basis for federal jurisdiction under the federal officer removal statute." App. 1670, 1672; R. Doc. 145, at 16, 18.

3M timely noticed an appeal. App. 1673; R. Doc. 146.

## SUMMARY OF ARGUMENT

**I.** 3M plausibly alleged the facts necessary to satisfy all elements of the federal-officer removal statute.

**A.** 3M is undisputedly a "person" within the statute's meaning.

**B.** It is similarly undisputed that 3M acted under federal authority when it manufactured and supplied MilSpec AFFF for the U.S. government.

**C.** This suit is "for or relating to" 3M's exercise of federal authority. 28 U.S.C. § 1442(a)(1). As the Supreme Court has recently emphasized, that phrase "sweeps broadly" and does not require "a strict causal relationship" between the defendant's federal conduct and the plaintiff's alleged injury. *Plaquemines*, 146 S. Ct. at 1060. 3M plausibly alleged that MilSpec AFFF was at least one source of PFAS to which Mr. Crady was exposed through his work as a firefighter. Those allegations are particularly plausible in light of Mr. Crady's own allegations in the original MDL complaint—where he claimed exposure to PFAS-containing firefighting foam, including AFFF—and his subsequent deposition testimony regarding his work in close proximity to AFFF.

**D.** 3M has a colorable federal government-contractor defense in this case, just as it does in any case where the notice of removal plausibly alleges that the injuries are at least partly related to MilSpec AFFF exposure—as numerous courts around the country have concluded. 3M's notice of removal plausibly alleged that 3M provided MilSpec AFFF to the federal government according to precise specifications requiring the use of PFAS and that the government was aware of the risks of PFAS. The federal-officer removal statute does not require anything more.

**II.** The district court's use of incomplete evidence to resolve the remand dispute was erroneous for at least two reasons. First, instead of crediting the plausible allegations in 3M's notice of removal, the court improperly demanded that 3M offer evidence. Second, instead of allowing a factfinder in federal court (*i.e.* a jury, or a judge at a bench trial) to resolve the parties' dispute over the sources of Mr. Crady's alleged exposure—an issue central to the viability of 3M's federal government-contractor defense—the court improperly and prematurely resolved that dispute based on cherry-picked portions of Mr. Crady's testimony and an underdeveloped evidentiary

record.

**A.** By demanding that 3M offer record evidence of Mr. Crady's exposure to PFAS from MilSpec AFFF, the district court necessarily failed to "credit [3M's] plausible factual allegations." *Plaquemines*, 146 S. Ct. at 1061. When a case is removed, courts "look only to the jurisdictional facts alleged in the Notice[] of Removal" in "determining whether jurisdiction is proper." *Agyin v. Razmzan*, 986 F.3d 168, 181 (2d Cir. 2021). That is because the removal statute protects the right to have factual disputes about "the validity of [a federal] defense" and other merits issues "tried in a federal court." *Willingham*, 395 U.S. at 407. In other words, a district court confronted with a remand motion must decide only whether the federal defense is "plausible," and it must do so based on the allegations in the removal petition. *Plaquemines*, 146 S. Ct. at 1061. If the federal defense is plausible, defendants are entitled "to present their version of the facts," *Willingham*, 395 U.S. at 409, to the "factfinder [that] ultimately decides liability" in "'a federal, not a state, court,'" *Maryland*, 130 F.4th at 391 (quoting *Willingham*, 395 U.S. at 409). There is no exception permitting a court to deprive the defendant of that right

based on a single deposition (let alone one that precedes discovery necessary to cross-examine the plaintiff).

**B.** This Court ultimately need not decide whether consideration of evidence on a remand motion is sometimes appropriate in federal-officer removal cases because the district court overstepped in any event.

*First*, federal courts broadly agree that district courts, at the removal stage, cannot resolve factual disputes that implicate the merits; the potential cause or causes of Mr. Crady's alleged exposure and illness is one such merits dispute.

*Second*, if the district court believed that it was appropriate to consider Mr. Crady's testimony at the removal stage, the court should have afforded 3M written discovery so that 3M could have meaningfully cross-examined Mr. Crady. Instead, the district court denied 3M such discovery and then faulted 3M for an underdeveloped record of plaintiffs' and the court's own making.

*Third*, Mr. Crady's own testimony still supports the plausibility of his exposure to MilSpec AFFF: Among other things, Mr. Crady acknowledged that he used firefighting foam during training,

responded to incidents where foam may have been used, and worked at a fire department that stored and carried foam concentrate. In light of this evidence, the district court's unexplained decision to credit Mr. Crady's bare denials of such exposure—over contrary evidence and the plausible allegations of the removal petition—was error.

**III.** The district court's reliance on plaintiffs' purported disclaimer of recovery for MilSpec-AFFF exposure was equally infirm.

**A.** To start, plaintiffs never offered a disclaimer. They merely represented in remand briefing that they were "not claiming" AFFF exposure because they believed there was "presently no evidence" of it. App. 668, 678; R. Doc. 13 ¶¶ 3, 23. That is a far cry from expressly disclaiming any relief stemming from AFFF exposure. Moreover, a plaintiff wishing to abandon or alter his claims must do so through an amendment to the complaint, not through briefing or attorney argument. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140–41 (8th Cir. 2014).

**B.** In any event, plaintiffs' purported disclaimer of AFFF-related relief cannot thwart federal-officer jurisdiction, as multiple

circuits have now held. Plaintiffs' supposed disclaimer contradicts 3M's theory—which this Court must "credit," *Griffin*, 175 F.4th at 902—that at least some of the PFAS to which Mr. Crady was exposed plausibly came from MilSpec AFFF. PFAS stemming from MilSpec AFFF commingles with, and is chemically indistinguishable from, PFAS from other sources. As multiple courts of appeals that have considered this issue have held, 3M's theory means that the fact-finder will "necessarily" be asked to allocate liability based on "work that 3M did for the federal government"—or will at least need to decide difficult causation questions. *Maryland*, 130 F.4th at 390–91; *accord Maine*, 159 F.4th at 138–39; *Pine Hill*, 2026 WL 2178967, at *5. Again, the federal-officer removal statute guarantees 3M the "the opportunity to present [its] version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409. And "no disclaimer, however worded," could deprive 3M of that opportunity. *Griffin*, 175 F.4th at 904.

**C.** In concluding otherwise, the district court relied principally on a smattering of unpublished, out-of-circuit district-court decisions that have since been abrogated. And the district court's sole

appellate authority, *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024), offers plaintiffs no help. *Raoul* conflicts with this Circuit's precedent to the extent it permits a plaintiff to "waive claims based on" "indivisibl[e]" injuries. *Griffin*, 175 F.4th at 904–05. And *Raoul* remanded only because the plaintiff made the extraordinary concession that recovery would be completely barred if the plaintiff's injury stemmed from "even a morsel" of MilSpec AFFF. *Raoul*, 111 F.4th at 849. Plaintiffs make no such concession here. App. 1668–70; R. Doc. 145, at 14–16. In the face of the failure to make a comparably emphatic disclaimer, numerous courts have upheld 3M's right to a federal forum. Thus, even assuming *Raoul* could somehow be harmonized with *Griffin*, it is irrelevant here.

## STANDARD OF REVIEW

This Court reviews *de novo* an order remanding a case removed under the federal-officer removal statute. *Griffin*, 175 F.4th at 901.

## ARGUMENT

### I. 3M Satisfied Every Requirement For Federal-Officer Removal.

The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a

civil action to federal court if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "[O]ne of the most important reasons" for this removal statute, *Griffin*, 175 F.4th at 901, is to supply "a federal forum in which to assert federal immunity" and similar "defenses." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007).

Because these defenses are "so important to the federal government," "removal rights under section 1442 are much broader than those under" other removal statutes. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). For one, the Supreme Court has directed that the strong federal policy in favor of removal of these actions "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407. Instead, section 1442 "should be liberally construed." *Griffin*, 175 F.4th at 901. And, this Court has held, "the typical presumption against removal does not apply." *Id.* Were the rule otherwise, state-court "interference with [federal] operations . . . would ensue." *Id.*

For another, "[t]he federal officer removal statute 'is an exception to the well-pleaded complaint rule,'" which provides that any

federal issue must be apparent on the face of the plaintiff's complaint. *Griffin*, 175 F.4th at 901. In federal-officer removal cases, courts and "defendants" are "not required to accept the truth of the plaintiff's allegations." *Osborn v. Haley*, 549 U.S. 225, 250 (2007). Instead, courts "credit plausible factual allegations by the *removing* party." *Plaquemines*, 146 S. Ct. at 1061 (emphasis added). To that end, a district court should "look only to the jurisdictional facts alleged in the Notice[] of Removal." *Agyin*, 986 F.3d at 181. "[E]videntiary submissions" by defendant are not necessary. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014).

This Court requires private defendants removing under section 1442(a)(1) to plausibly allege four elements: "that (1) they are 'persons' within the meaning of § 1442(a)(1); (2) they acted under the direction of a federal officer; (3) there is a sufficient connection between those acts and the [plaintiff's] claims for relief; and (4) they have a colorable federal defense to the [plaintiff's] claims." *Griffin*, 175 F.4th at 901–02. "In evaluating the propriety of [federal-officer] removal, [courts] must credit the defendants' theory of the case." *Id.* at 902.

3M's notice of removal establishes all four elements of federal-officer removal. This case therefore belongs in federal court.

### A. All Agree 3M Is A "Person" Within The Meaning Of Section 1442.

3M readily satisfies the first element: It is a "person" for purposes of the federal-officer removal statute. As this Court has held, "the 'person' contemplated by the federal officer removal statute includes corporations." *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C.*, 593 U.S. 230; *see* 1 U.S.C. § 1 (the word "person" "include[s] corporations," "unless the context indicates otherwise"). Because 3M is a corporation, this element is "not contest[ed]." App. 1664; R. Doc. 145, at 10.

### B. It Is Similarly Undisputed That 3M Acted Under Federal Authority.

The "acting under" requirement describes "the triggering relationship between a private entity and a federal officer." *Watson*, 551 U.S. at 149. "A private person will act under a federal officer when the person assists or helps the federal officer carry out 'basic governmental tasks' while under the government's 'subjection, guidance, or

control.'" *Griffin*, 175 F.4th at 902 (quoting *Watson*, 551 U.S. at 151–53). A government contractor is a quintessential example of a person "acting under" a federal officer. *See Watson*, 551 U.S. at 153.

As plaintiffs "acknowledge[d]" in the district court, "3M acted under the direction of a federal officer" when it manufactured AFFF for the Department of Defense pursuant to rigorous U.S. military oversight and specifications that required the use of PFAS. App. 1664; R. Doc. 145, at 10; *see* App. 35–36; R. Doc. 1 ¶¶ 38–40. The acting-under element is therefore satisfied, too.

### C. This Suit Relates To Actions 3M Took Pursuant To Its Authority As A Federal Contractor.

"To satisfy the requirements for removal," "defendants also must establish that acts taken under the direction of a federal officer 'relate to' their challenged conduct." *Griffin*, 175 F.4th at 903. "'The phrase "relating to" sweeps broadly,' and 'a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct.'" *Id.* (quoting *Plaquemines*, 146 S. Ct. at 1060). The lawsuit and the defendant's federal tasks relate to one another so long as the connection "is not 'tenuous, remote, or

peripheral.'" *Plaquemines*, 146 S. Ct. at 1061. This test is "broade[r]" than the old "causal connection" test that applied under the pre-2011 version of the statute. *Id.* at 1060 n.3.

Plaintiffs' own allegations, coupled with the well-pleaded facts in 3M's notice of removal, establish the required connection between plaintiffs' lawsuit and 3M's work as a federal contractor.

*First*, it is clear—and has never been disputed—that plaintiffs are suing to recover for harm allegedly caused by PFAS exposure. *See* App. 22–23; R. Doc. 1 ¶¶ 1–2 (notice of removal). At the time of removal, plaintiffs' operative complaint sought relief on the theory that Mr. Crady's "exposures to cancer-causing chemicals . . . caused or contributed to . . . his thyroid cancer." App. 48; R. Doc. 1-1 ¶ 8. Although the particular chemicals are not identified, plaintiffs sued manufacturers of PFAS (3M and DuPont), as well as manufacturers of firefighter equipment that are alleged in other lawsuits (such as the AFFF MDL) to have used PFAS in their products. App. 22; R. Doc. 1 ¶ 1. Were there any doubt, the original MDL complaint was explicit that Mr. Crady believed he "was diagnosed with Thyroid

Cancer as a result of exposure to" products "containing PFAS." App. 90; R. Doc. 1-3 ¶ 34.

*Second*, the challenged conduct plausibly encompasses 3M's MilSpec AFFF, rather than just non-AFFF PFAS alleged to be in, say, bunker gear. *Contra* App. 665; R. Doc. 13, at 1 (attempting, in remand motion, to cabin complaint to "bunker gear"). To be sure, the operative complaint avers that Mr. Crady "was dermally exposed to, or otherwise inhaled, ingested, and/or otherwise absorbed cancer-causing chemicals included in firefighting protective gear." App. 49; R. Doc. 1-1 ¶ 12. But it also attributes that alleged exposure more broadly to Mr. Crady's "use[], handl[ing], and transport[ation] [of] Defendants' equipment or Products." App. 49; R. Doc. 1-1 ¶ 9. As with the reference to "chemicals," the full range of "Products" is never identified in the operative complaint. Mr. Crady's *original complaint*, however, is more forthcoming. In a paragraph identifying Mr. Crady by name, that complaint mentions firefighting foams as one of the alleged sources of his PFAS exposure and allegedly resulting injuries:

> 34. Plaintiff Jason Crady is a resident and citizen of Lake St. Louis, Missouri. Plaintiff Crady regularly used, and was thereby directly exposed to, Class B foams and bunker gear containing PFAS in training and to extinguish fires during his working career as a military and/or civilian firefighter Robertson Fire Protection District and the Lincoln County Ambulance District in Missouri. Plaintiff Crady was diagnosed with Thyroid Cancer as a result of exposure to Defendants' products.

App. 90; R. Doc. 1-3 ¶ 34. "The most common Class B foam," the complaint continues, is "AFFF," which "contains PFAS." App. 137; R. Doc. 1-3 ¶¶ 206, 208. And the notice of removal explains that 3M has "historically manufactured and sold PFAS-containing MilSpec AFFF to certain non-military users, including in Missouri." App. 32; R. Doc. 1 ¶ 31; *see* App. 23; R. Doc. 1 ¶ 2 (similar).

In light of all this, 3M alleged in its notice of removal that "Mr. Crady plausibly has been exposed to MilSpec AFFF" "through his training and service as a firefighter"; that any PFAS "in Mr. Crady's body from MilSpec AFFF is indistinguishable from [PFAS] from other sources, such as firefighting protective gear"; and that Mr. Crady therefore could not "at the pleading stage distinguish injuries

allegedly caused by non-AFFF PFAS from . . . MilSpec AFFF." App. 23, 33–34; R. Doc. 1 ¶¶ 3, 32, 36.[2]

"[C]redit[ing]" 3M's "theory of the case," there is an obvious and direct connection between the work 3M performed for the federal government—production of PFAS-containing MilSpec AFFF—and "at least a 'portion of the[] relevant [charged] conduct.'" *Maryland*, 130 F.4th at 389, 391; *see*, *e.g.*, *Maine*, 159 F.4th at 138 ("credit[ing] 3M's theory that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination . . . broadly alleged in [the] Complaint"); *Pine Hill*, 2026 WL 2178967, at *4 (even without "explicit[] alleg[ations]" about AFFF, "the gravamen of [the] complaint" suggested AFFF was "a possible source of PFAS contamination"); *Czerno v. Gen. Elec. Co.*, --- F.4th ----, 2026 WL 2030449,

[2] 3M was not required to allege that Mr. Crady was in fact "exposed to 3M manufactured AFFF" or that this potential exposure in fact caused his illness. *Contra* App. 668; R. Doc. 13 ¶ 3. "It was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offense." *Willingham*, 395 U.S. at 408. "Thus," 3M "need not have admitted that [it] actually injured" Mr. Crady. *Id.*

at *9 (1st Cir. July 14, 2026) (nexus requirement satisfied in personal-injury case where "several" allegations "relate[d]" to defendant's "manufacture" of products for federal government).

No doubt, there may end up being "difficult factual questions" down the line about causation, such as the precise source or sources of Mr. Crady's alleged PFAS exposure. *Maryland*, 130 F.4th at 391. But "Congress gave federal officers 'the protection of a federal forum' in which to resolve those disputes." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 189 (1st Cir. 2024) (quoting *Willingham*, 395 U.S. at 407). "After all, the federal officer removal statute's purpose is to provide a federal forum 'when particular litigation implicates a cognizable federal interest,' like holding a government contractor liable for producing products for, and in line with the specifications, of the United States military." *Maryland*, 130 F.4th at 391. So, to the extent plaintiffs dispute to what degree MilSpec AFFF is responsible for Mr. Crady's illness, 3M "should have the opportunity to present [its] version of the facts to" the ultimate trier of fact in "a federal, not a state, court." *Willingham*, 395 U.S. at 409. "This is exactly what the removal statute was designed to accomplish." *Id.*

### D. 3M Asserted A Colorable Federal Defense.

Finally, a private defendant seeking removal under section 1442(a)(1) must demonstrate "a colorable federal defense." *Griffin*, 175 F.4th at 902. The Supreme Court has made clear that this is not a high bar. Because courts "do not require [the defendant] virtually to 'win his case before he can have it removed,'" the defense does not have to be "'clearly sustainable.'" *Jefferson County v. Acker*, 527 U.S. 423, 431–32 (1999). Rather, "[f]or a defense to be considered colorable, it need only be plausible." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

Nor must the federal defense constitute a complete bar to all liability or damages. It is enough for that defense to be "a single [] ingredient in the mass," *Mesa v. California*, 489 U.S. 121, 129 (1989)—*i.e.*, at least a partial defense, *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996).

3M invoked the federal government-contractor defense, which provides that government contractors are immune from state-law claims seeking to impose liability for products they furnished to the federal government, so long as "(1) the United States approved

reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

3M's notice of removal plausibly alleges sufficient facts to support all three elements of this defense. *First*, the federal government developed and used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF, and those specifications required the use of PFAS. App. 40–41; R. Doc. 1 ¶ 48.

*Second*, the military determined that 3M's AFFF products conformed to those specifications, as shown by the inclusion of those products in the military's "Qualified Products List." App. 41; R. Doc. 1 ¶ 49.

*Third*, 3M was not aware of any material risk regarding MilSpec AFFF about which the federal government did not know. App. 41–43; R. Doc. 1 ¶¶ 50–51. The government has long understood—and publicly acknowledged—that AFFF contains PFAS, that AFFF

constituents may migrate to groundwater, and that some studies suggest potential adverse effects from PFAS. *See id.*

Taking the notice of removal's allegations as true, 3M asserted a government-contractor defense that was more than colorable. For good reason, then, neither plaintiffs nor the district court considered the defense inadequately pleaded; they were simply of the (mistaken) view that, for the defense to be "colorable," 3M was required to—but did not—supply evidence that Mr. "Crady was exposed to MilSpec AFFF." App. 1667; R. Doc. 145, at 13; *see supra* n.2; *infra* Part II. In other words, they disagreed (again, mistakenly) that the case was "for or relating to" MilSpec AFFF. *See infra* n.3.

* * *

3M plausibly alleged all four elements necessary to invoke federal jurisdiction under the federal-officer removal statute.

## II. The District Court Imposed An Evidentiary Standard That Is Inconsistent With Section 1442.

Rather than credit 3M's theory of the case and the plausible allegations in the notice of removal, the court faulted 3M for providing insufficient evidence to establish that Mr. Crady was exposed to

MilSpec AFFF. That was reversible error. Section 1442 requires allegations, not evidence, and the district court did not determine that the allegations (which tracked Mr. Crady's own allegations from his South Carolina lawsuit) were implausible. The district court also denied 3M's request for discovery to develop that evidence and ultimately ignored the available evidence that *does* suggest that Mr. Crady was exposed to AFFF. These were reversible errors, too.[3]

### A. The District Court Improperly Credited Rebuttal Evidence Over 3M's Plausible Allegations.

The district court's rejection of 3M's allegations rested on the incorrect belief that a removing defendant must produce evidence to substantiate its theory of removal. "If 3M can sustain removal merely by alleging exposure to MilSpec AFFF without sufficient

[3] The district court concluded that the supposed "insufficiency of the facts" meant that "3M ha[d] failed to establish a colorable federal defense." App. 1668; R. Doc. 145, at 14. As this Court and others have recognized, questions about the connection between the allegations in the complaint and a defendant's government work might more naturally fit within "the nexus element of the federal officer removal statute." *Maryland*, 130 F.4th at 392 & n.6; *see Griffin*, 175 F.4th at 903 (evaluating arguments similar to those raised by plaintiffs here as implicating the "relating to" requirement). Whichever part of the test provides the appropriate rubric, the district court's errors remain the same.

supporting evidence in the record," the court reasoned, then "3M would have the ability to remove any case simply by virtue of its manufacture of MilSpec AFFF." App. 1666; R. Doc. 145, at 12. That reasoning is doubly wrong: A defendant invoking federal-officer jurisdiction need supply plausible allegations—hardly a free pass for removal. And the imposition of an evidentiary requirement is inconsistent with section 1442.

**1.** A defendant "desiring to remove any civil action from a State court" must file "a notice of removal . . . containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design," this "tracks the general pleading requirement stated in" Federal Rule of Civil Procedure 8(a). *Dart Cherokee*, 574 U.S. at 87. As a result, the jurisdictional analysis proceeds much like a motion to dismiss for failure to state a claim: "Under the federal officer removal statute, a federal court examines the notice of removal's well-pleaded allegations to see if the removing party has demonstrated 'an adequate threshold showing' for removal." *Gov't of Puerto Rico*, 119 F.4th at 189; *see supra* p.28. 3M made that showing. *See supra* Part I. Nothing more was necessary.

**2.** The district court's "impos[ition]" of "a higher [] standard" "was inappropriate." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). The Supreme Court has already held as much: "A statement 'short and plain' need not contain evidentiary submissions." *Dart Cherokee*, 574 U.S. at 84.

The basis for the district court's contrary conclusion is unclear. Although the court purported to address whether 3M had "plausibly allege[d] the necessary facts," the court's exclusive focus was the "additional facts"—that is, the "evidence"—adduced in Mr. Crady's deposition. App. 1666–67; R. Doc. 145, at 12–13. The district court's perfunctory statement that it was "not applying a heightened standard" is therefore inconsistent with the court's actual approach. App. 1667; R. Doc. 145, at 13; *cf. Sexton v. Beaudreaux*, 585 U.S. 961, 968 (2018) (per curiam) (lower court's "perfunctory statement" of correct rule did not shield decision from reversal). The district court cited two unpublished district-court decisions taking a similar approach, but neither supplied a reason to disregard the Supreme Court in *Dart Cherokee* and demand "evidence in the record" at the removal stage. *Copeland v. 3M Co.*, 2023 WL 185983, at *3 (D. Minn. Jan.

13, 2023); *Jalili v. 3M Co.*, 2022 WL 3044799, at *3 (D. Minn. Aug. 2, 2022).

The district court's conclusion appears to have been driven by policy considerations—namely, the belief that allowing 3M to remove via "alleg[ations]" rather than "evidence" would allow 3M "to remove any case." App. 1666; R. Doc. 145, at 12. That view is untenable. Putting aside that 3M *did* supply supporting evidence, *see infra* pp.50–51, the ability to get into federal court by "alleging" a particular set of facts is not "nonsensical"—it is the way all pleadings work, App. 1666; R. Doc. 145, at 12. And it is subject to considerable safeguards. Like any other pleading, "a notice of removal" must be "signed pursuant to Rule 11." 28 U.S.C. § 1446(a). There must be "plausible factual allegations" as well as a "federal defense" that is at least "colorable." *Plaquemines*, 146 S. Ct. at 1058, 1061. And unlike many other kinds of judgments, "[a]n order remanding [a] case may require payment of . . . attorney fees." 28 U.S.C. § 1447(c).

Regardless, the district court's demand for evidence finds no support in the federal-officer removal statute. Some other removal statutes, by contrast, *do* contemplate evidentiary standards at the

removal stage. For example, the statute governing disputes over the "amount in controversy" in certain civil cases requires courts to take evidence and resolve such disputes "by the preponderance of the evidence." 28 U.S.C. § 1446(c)(2)(B); *see Dart Cherokee*, 574 U.S. at 88 ("Evidence establishing the amount is required by § 1446(c)(2)(B) [] when the plaintiff contests, or the court questions, the defendant's allegation."). Similarly, 28 U.S.C. § 1455(b)(5) requires "an evidentiary hearing" for removal of criminal cases. *Georgia v. Meadows*, 88 F.4th 1331, 1336 (11th Cir. 2023). The federal-officer removal statute, by contrast, contains no such requirement for civil cases. *Cf. Pine Hill*, 2026 WL 2178967, at *2–3 (declining to apply *Meadows* "in the civil context"). This Court should give effect to that congressional choice. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Additionally, permitting threshold evidentiary disputes "would defeat the purpose of the [federal-officer] removal statute." *Acker*,

527 U.S. at 432. Section 1442, the Supreme Court has explained, was designed to ensure that federal officers and those acting under them would "have the opportunity to present their version of the facts to a federal, not a state, court," *Willingham*, 395 U.S. at 409—*i.e.*, to a "factfinder [that] ultimately decides liability" in federal court, *Maryland*, 130 F.4th at 391; *see Maine*, 159 F.4th at 140 (similar).

For that reason, the Supreme Court has rebuffed efforts by plaintiffs to call into question at the removal stage defendants' factual allegations about "the required . . . connection" and "colorable defense." *Acker*, 527 U.S. at 432; *see*, *e.g.*, *Willingham*, 395 U.S. at 409 (rejecting plaintiff's efforts to have court resolve factual dispute about "causal connection" at removal stage). As the Sixth Circuit has held, a plaintiff cannot "reestablish[] [state-court] jurisdiction merely by filing a document" contradicting the defendants' allegations. *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1008 (6th Cir. 2026). "Else, the officer removal statute would not [] provide[] any protection at all." *Id.*

The same basic problems are presented by defeating removal based on a one-sided and highly limited factual showing. After all, the right secured by the federal-officer removal statute is a right to present federal defenses and related factual issues to the factfinder in federal court. Losing that right based on a truncated threshold determination defeats that guarantee. Here, for example, to reestablish state jurisdiction, Mr. "Crady testified multiple times in his deposition that he ha[d] not been exposed to AFFF." App. 1667; R. Doc. 145, at 13. And the district court simply credited Mr. Crady's self-serving account. App. 1667; R. Doc. 145, at 13; *see infra* Part II.B. 3M, however, was entitled to have "the validity" of its "version of the facts" "tried in a federal court." *Willingham*, 395 U.S. at 407, 409. By depriving it of that opportunity, the district court impermissibly "frustrate[d] the statutory policy of facilitating access to a federal forum." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

### B. The District Court Improperly Resolved Factual Disputes Implicating The Merits Of 3M's Federal Defense.

Ultimately, this Court need not decide whether evidentiary challenges to federal-officer removal are sometimes permissible:

The district court reversibly erred under any conceivable standard for such challenges.

**1.** In the few courts that permit evidentiary challenges at the removal stage, the factual inquiry is limited to collateral issues; those courts prohibit plaintiffs from launching "factual attack[s]" that "bleed[] into the merits of the case." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 n.4 (3d Cir. 2016). That is, resolution of a factual dispute is appropriate only "[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action*." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). If the facts do implicate the merits, "a court must leave the resolution . . . to the trier of fact." *Leite*, 749 F.3d at 1122 n.3; *accord*, *e.g.*, *Morrison*, 323 F.3d at 925 ("[t]he proper course of action for the district court . . . is to find that jurisdiction exists" (alteration adopted)). After all, because the purpose of federal-officer removal is to give the defendant the benefit of a federal forum to resolve those disputes, section 1442 does not "demand[] an airtight case on the merits" to warrant removal. *Acker*, 527 U.S. at 432.

The issues here—the potential cause or causes of Mr. Crady's illness and the scope of 3M's federal defense—do not just bleed into the merits of the case. They are the *heart* of the merits. *See McCostlin v. Monsanto Co.*, 718 S.W.3d 435, 442 (Mo. Ct. App. 2025) (plaintiff pursuing "strict liability and negligence" product-liability claims must "show a causal connection between the defendant's conduct and the plaintiff's injury"); *Maryland*, 130 F.4th at 392 ("causation and allocation questions . . . are merits questions"); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (similar).

Yet the district court took on the role of "factfinder" to resolve what the Fourth Circuit has described as "a challenging causation question": "whether certain PFAS [exposure] came from 3M's Military AFFF or from [certain] non-AFFF products." *Maryland*, 130 F.4th at 391. And the court did not just entertain Mr. Crady's competing, self-serving testimony—it treated that testimony as dispositive. *See* App. 1667; R. Doc. 145, at 13; *infra* p.51. As the *Maryland* court correctly concluded, this is precisely the kind of factual dispute that should "ultimately fall to a factfinder" in "federal court." 130 F.4th at 391; *accord Maine*, 159 F.4th at 139–40; *see Pine Hill*, 2026

WL 2178967, at *9 (Newsom, J., concurring in judgment) ("Requiring 3M (at the pleadings stage) to prove by a preponderance of the evidence that its federal activities . . . caused the river's pollution would [] encroach into the 'merits' and thereby usurp the jury's factfinding role.").

**2.** Worse, the district court appears to have recognized it was weighing in on a merits issue, but forged ahead on a one-sided record anyway. The district court permitted the pre-discovery deposition of a plaintiff—one of litigation's most important fact-gathering devices—while denying a defendant access to the evidence needed to meaningfully cross-examine that plaintiff and to develop its defense. App. 1464; R. Doc. 92, at 3.

That lopsided record came about this way: It was *Mr. Crady* who first alleged he was exposed to firefighting foam, including AFFF. App. 90; R. Doc. 1-3 ¶ 34. When requesting an early deposition, however, plaintiffs explained that Mr. Crady intended to use the opportunity in part to undermine 3M's theory of his "exposure to AFFF." App. 1355–62; R. Doc. 81. 3M therefore asked that Mr. Crady "be ordered to produce . . . written discovery" that would allow

3M to question Mr. Crady meaningfully about the source of his alleged PFAS exposure. App. 1464; R. Doc. 92, at 3.

The district court denied 3M's request for written discovery as "excessive and impractical," reasoning that 3M would "be able to develop the evidence on [the covered] topics in discovery." App. 1464; R. Doc. 92, at 3. True enough. But, again, section 1442 affords 3M "the opportunity" to obtain that discovery and litigate the merits in "a federal, not a state, court." *Willingham*, 395 U.S. at 409. Yet 3M never made it to ordinary discovery in federal court because the district court ordered a remand based on an incomplete record developed with 3M's hands tied.[4] By taking this approach, the court erred. App. 1667; R. Doc. 145, at 13.

---

[4] For example, Mr. Crady testified that his fire department had performed fire-extinguishing drills at a Part 139 airport that historically has used MilSpec AFFF; Mr. Crady denied participation in those drills but noted that the department kept records about its firefighters' work at the airport. *See supra* n.1. Without third-party discovery of those records, 3M had no way of challenging Mr. Crady's self-serving denials. And, again, the extent to which Mr. Crady's alleged injuries stemmed from exposure to MilSpec AFFF—at a Part 139 airport or otherwise—is a question that should be answered by a federal factfinder.

**3.** What's more, the district court's determination that there were no "specific facts" suggesting Mr. "Crady was exposed to Mil-Spec AFFF" is unsustainable even on the one-sided record below. App. 1667; R. Doc. 145, at 13. Mr. Crady alleged in his original complaint that he was exposed to AFFF; those allegations were independently sufficient evidence of exposure to support removal. *See supra* pp.10–11; *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998) ("abandoned state court pleadings . . . are admissible evidence that can be weighed like any other admission"). The timing of Mr. Crady's voluntary dismissal of the original complaint undermines his efforts to explain away the exposure allegations. *See supra* p.12. So too does Mr. Crady's operative complaint, which does not expressly disavow AFFF-related injury, instead alleging exposure "during his career" to unnamed "cancer-causing chemicals" from the use, handling, and transportation of also-unnamed 3M "equipment or Products." App. 26; R. Doc. 1 ¶ 12; *see supra* p.12. And Mr. Crady's own testimony suggested that there were at least several opportunities for AFFF exposure, including during his use of a firehose to discharge firefighting foam; his training to load foam into a truck; his

response to calls where it appeared foam had been used; and during his time at the fire department, where firefighting foam concentrate was stored. App. 1497–1502; R. Doc. 134-1, at 31:8–36:20; App. 1508–12; R. Doc. 134-1, at 301:15–305:16.

The district court does not appear to have considered any of this. *Cf. USPS Bd. of Govs. v. Aikens*, 460 U.S. 711, 714 n.3 (1983) ("The trier of fact should consider all the evidence," including "direct or circumstantial evidence."). It likewise ignored that 3M's limited access to evidence was a problem of the court's own making. Instead, and without explanation, the court simply credited Mr. Crady's bare denials—apparently considering it sufficient that Mr. "Crady testified multiple times in his deposition that he has not been exposed to AFFF." App. 1667; R. Doc. 145, at 13. *But cf. Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1078–79 (8th Cir. 2008) ("mere denials" insufficient to defeat summary judgment). This, too, was reversible error. *Cf. Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009) ("An abuse of discretion occurs where the district court fails to consider an important factor.").

* * *

"Where the parties dispute difficult factual questions about [a] federal interest, a contractor acting at the government's direction 'should have the opportunity to present their version of the facts to a federal, not a state, court.'" *Maryland*, 130 F.4th at 391. The district court's premature and one-sided resolution of a core merits question deprived 3M of that opportunity, impermissibly undercutting 3M's right to a federal forum to litigate its federal defense.

## III. Plaintiffs' Purported Disclaimer Cannot Sever The Connection To MilSpec AFFF.

Compounding its error, the district court held that plaintiffs' purported disclaimer of relief for any injury caused by AFFF "remove[d] the basis for federal jurisdiction under the federal officer removal statute." App. 1672; R. Doc. 145, at 18. This holding is flawed from beginning to end: There was no such disclaimer. And, even if there had been, it is well settled that plaintiffs may not defeat federal-officer jurisdiction through a disclaimer that contradicts the removing defendant's theory of the case.

### A. Plaintiffs' Litigation Statements Do Not Amount To A Disclaimer Of AFFF-Based Relief.

The district court's disclaimer reasoning rests on a false premise: that plaintiffs disclaimed AFFF-related recovery. The operative complaint contains nothing resembling a disclaimer. Nor do plaintiffs' briefs, which assert only that plaintiffs are not claiming AFFF exposure because they do not "presently" know of any such exposure. App. 668, 678; R. Doc. 13 ¶¶ 3, 23. The omission of a claim is hardly the same as an affirmative disclaimer. *See Disclaimer*, Black's Law Dictionary (12th ed. 2024) ("A renunciation of one's own legal right or claim."). The district court therefore erred by construing plaintiffs' remand-briefing statements "that they are not claiming AFFF exposure" as an "express disclaimer of the right to claim damages relating to, or arising out of, exposure to, or injuries suffered as a result of MilSpec AFFF." App. 1668–69; R. Doc. 145, at 14–15.

Regardless, a disclaimer in a brief cannot alter the scope of the claims asserted in a complaint. This Court has repeatedly held that "claims are properly" amended "through amended complaints" only, and that a "plaintiff may not amend her complaint through

argument in a brief." *InfoDeli, LLC v. W. Robidoux, Inc.*, 136 F.4th 792, 801 n.6 (8th Cir. 2025) (citing Fed. R. Civ. P. 15); *accord*, *e.g.*, *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). "To hold otherwise would mean that a party could unilaterally amend a complaint at will," with none of the limits or judicial oversight mandated by Rule 15. *Morgan*, 868 F.2d at 995.

As this Court's decision in *Thomas v. United Steelworkers Local 1938* illustrates, that rule applies with equal force to efforts to deprive the court of jurisdiction. In a brief opposing the defendants' motion for summary judgment, the plaintiff in that case purported to "dismiss[] all claims" except for two state-law causes of action. 743 F.3d at 1138. And, on appeal, he argued that his statement "removed all the federal claims," depriving the district court of jurisdiction to enter summary judgment against him. *Id.* at 1139.

This Court rejected that gambit. The plaintiff, this Court explained, "could not unilaterally dismiss or withdraw his federal claims in a memorandum . . . so as to strip the court of its jurisdiction." *Thomas*, 743 F.3d at 1140. "Rule 15 governs when and how a plaintiff may amend his complaint," and the plaintiff "failed to follow

[its] procedures." *Id.* The plaintiff's purported dismissal thus served merely to "abandon" the federal claims "for purposes of argument," not to "remove[]" them from the operative complaint. *Id.* at 1141. This Court therefore concluded that the district court's subject-matter jurisdiction was unaffected. *Id.*

The Eighth Circuit is far from alone in so holding. *See Thomas*, 743 F.3d at 1140 (collecting cases). The Fourth Circuit, for example, has likewise rejected plaintiffs' attempts to "amend their complaint on the fly to waive claims that ha[ve] a federal connection." *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 196 n.4 (4th Cir. 2025). "Without considering whether such a disclaimer would be effective," the court held that, "to effect a mid-litigation disclaimer of federal claims so as to preclude federal officer removal, a party must amend their complaint." *Id.*

The same is true here. As written, the operative complaint seeks recovery for Mr. Crady's alleged exposure to certain "cancer-causing chemicals" that plausibly include PFAS derived from Mil-Spec AFFF. *E.g.*, App. 400; R. Doc. 8 ¶ 9; *see supra* pp.12–13. Plaintiffs' various litigation statements—that even the district court had

trouble parsing, *see supra* p.19—were not a permissible method for "remov[ing]" or altering those "claims." *Thomas*, 743 F.3d at 1140.

### B. The Purported Disclaimer Impermissibly Contradicts 3M's Theory of Removal.

Even if the complaint had disclaimed AFFF-based relief, the disclaimer still would have been ineffective. This Court—like many others—does not permit plaintiffs to evade federal-officer jurisdiction through disclaimers that contradict the removing defendant's theory of the case. For that reason, numerous courts have rejected such disclaimers in the specific context of alleged PFAS contamination.

3M's theory of the case is that Mr. Crady plausibly was exposed to MilSpec AFFF and that plaintiffs, at the removal stage, cannot easily "isolate personal injuries caused by" "AFFF and non-AFFF sources of PFAS." App. 23, 30; R. Doc. 1 ¶¶ 2, 26. Eventually, a factfinder will have to determine—based on expert testimony and other evidence—to what degree (if at all) Mr. Crady's illness was caused by MilSpec AFFF. If the factfinder concludes that Mr. Crady's illness was attributable, even in part, to MilSpec AFFF, then

recovery will be barred or limited by 3M's federal government-contractor defense. By contrast, if the factfinder concludes that the illness is attributable exclusively to non-AFFF PFAS, then 3M's government-contractor defense will fail.

In other words, "[r]esolution of [plaintiffs'] Complaint requires addressing whether and to what extent [exposure] from AFFF sources" has caused or contributed to Mr. Crady's illness. *Maine*, 159 F.4th at 138–39. And those "important causation and allocation questions" go to the "merits" of 3M's federal defense. *Maryland*, 130 F.4th at 392; *accord*, *e.g.*, *Pine Hill*, 2026 WL 2178967, at *9 (Newsom, J., concurring) ("The need to allocate causation and harm . . . means that liability for [non-federal work] necessarily implicates liability for [federal work]."). So, under section 1442, 3M "should have the opportunity to present [its] version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409.

A wealth of decisions—from the Supreme Court, this Court, and others—confirm that disclaimers like plaintiffs' cannot alter this conclusion.

***The Supreme Court.*** *Chevron USA Inc. v. Plaquemines*

*Parish* likewise involved an effort to plead around section 1442. There, a local government sued Chevron and other defendants in state court for environmental damage, claiming they failed to obtain necessary permits under a law that "took effect in 1980" and that exempted activities "legally commenced" before that year. 146 S. Ct. at 1059. In the hopes of avoiding federal jurisdiction, the plaintiff "limit[ed] the scope of [its] claims," expressly disavowing any "claims . . . preempted by federal law." Compl. ¶ 33, *Plaquemines Parish*, No. 2:18-cv-05256 (E.D. La. May 23, 2018), Dkt. 1-8.

Chevron removed under section 1442(a), alleging that the plaintiff's expert report revealed that the case implicated production activities undertaken pursuant to federal direction during World War II. Notice of Removal at 2–3, *Plaquemines Parish v. Total Petrochemicals & Refining USA, Inc.*, No. 2:18-cv-05256 (E.D. La. May 23, 2018), Dkt. 1.

Chevron's allegations carried the day. *See Plaquemines*, 146 S. Ct. at 1060. It did not matter that the complaint was "strictly limited" to Chevron's post-1980 permitting violations, did not mention Chevron's WWII-era work, and purported to disavow any claims that

would confer federal jurisdiction. Plaquemines Parish Br. at 14, *Plaquemines*, No. 24-813 (U.S. Nov. 13, 2025). The Supreme Court "credit[ed] [*Chevron's*] plausible factual allegations" and concluded that the case "implicate[d] Chevron's wartime production of crude oil." *Plaquemines*, 146 S. Ct. at 1060–61. In other words, despite the disclaimer, it was the removing defendant's "theory" that controlled. *Id.* at 1059.

***The Eighth Circuit.*** Earlier this year, this Court followed suit in *Griffin v. Optum, Inc.*, an Arkansas-led enforcement action against certain pharmacy benefit managers. 175 F.4th at 901. The defendants removed to federal court on the theory that Arkansas sought to hold them liable for conduct taken "at the direction of federal officers in administering federal health care programs." *Id.* Granting Arkansas's motion to remand, the district court relied on the complaint's disclaimer of any "action or claim of any kind directed to, any federal officer or person acting under any office of the United States for or relating to any act under color of such office." *Id.* at 904. In light of that disclaimer, the court could conceive of "no scenario where Defendants could be liable based on [their]

involvement with the federal government." *Arkansas ex rel. Griffin v. Optum, Inc.*, 2024 WL 6991679, at *3–4 (E.D. Ark. Dec. 31, 2024).

This Court reversed. The panel unanimously rejected Arkansas's attempt to "destroy[] federal jurisdiction" by disavowing "all claims of relief for the defendants' actions under a federal officer." *Griffin*, 175 F.4th at 904. "Under the defendants' theory of the case," this Court explained, the companies "conduct[ed] rebate negotiations indivisibly" for both federal and private plans. *Id.* at 904–05. So, if the companies "were liable for negotiating rebates on behalf of private clients, [they] would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation." *Id.* at 905. And because the district court was required to "credit the defendants' theory of the case," "no disclaimer, however worded, c[ould] help [Arkansas] avoid a causal nexus between [the companies'] conduct on behalf of the federal government and [Arkansas's] claims." *Id.* at 902, 904.[5]

[5] *Accord*, *e.g.*, *Yost*, 165 F.4th at 1009 (crediting "defendants' theory of the case"—which "center[ed] on the indivisibility of their work for private and federal clients"—required the court "to reject Ohio's disclaimer"); *CaremarkPCS Health*, 140 F.4th at 193, 195–96

Just so here. "Under [3M's] theory of the case"—which the district court was required to credit—any harm from exposure to PFAS in MilSpec AFFF (which would be subject to a federal defense) is "indivisibl[e]" from exposure to other PFAS sources (which would not). *Griffin*, 175 F.4th at 904–05. Simply put, "no disclaimer, however worded, can help [plaintiffs]" here. *Id.* at 904.

***The First, Fourth, and Eleventh Circuits.*** Applying this same reasoning in the context of alleged PFAS contamination, three other circuits recently rejected plaintiffs' efforts "to immunize their complaints from federal officer removal with [] purported disclaimers." *Maryland*, 130 F.4th at 389. In the First Circuit, Maine's complaint against 3M (and others) disclaimed "any relief for contamination or injury related to Aqueous Film Forming Foam." *Maine*, 159 F.4th at 131. In the Fourth Circuit, Maryland and South Carolina

(plaintiff's "mid-litigation disclaimers d[id] not preclude removal" as it still sought "to hold the [company] liable for indivisible rebate negotiations which includes federal government work"); *Puerto Rico*, 119 F.4th at 189, 191 (pharmacy benefit manager's allegation of one single, "indivisib[le]" course of negotiations—"an important facet of [its] theory of the case that must be credited"—made the case removable "no matter what the disclaimer says" (cleaned up)).

used similar language in their complaints. *See Maryland*, 130 F.4th at 386–87. So did the Town of Pine Hill in the Eleventh Circuit. *See Pine Hill*, 2026 WL 2178967, at *5. 3M removed all these cases, alleging that PFAS from MilSpec AFFF and non-AFFF sources had commingled and were indistinguishable in the environment. *Maryland*, 130 F.4th at 386; *Maine*, 159 F.4th at 133; *Pine Hill*, 2026 WL 2178967, at *1–2.

The district courts remanded, but the courts of appeals reversed. The circuit courts emphasized that, at the removal stage, they "must credit 3M's theory that [AFFF] PFAS contamination . . . has commingled with and so has become in[di]visible with the [non-AFFF] PFAS contamination . . . broadly alleged in" the complaints. *Maine*, 159 F.4th at 138; *accord Maryland*, 130 F.4th at 389; *Pine Hill*, 2026 WL 2178967, at *4. Because any adjudication of that theory would affect "the scope of" 3M's defense, the federal-officer removal statute required a "federal forum" for resolving the "difficult factual questions about" causation and allocation. *Maryland*, 130 F.4th at 391; *accord Maine*, 159 F.4th at 138–39. Giving effect to the disclaimers, however, "would leave a *state* court to determine the

nexus between the charged conduct and federal authority." *Maine*, 159 F.4th at 139 (internal quotation marks omitted; emphasis added); *accord Pine Hill*, 2026 WL 2178967, at *5. The courts of appeals were unwilling to allow the States to circumvent section 1442 through such "artful pleading." *Maine*, 159 F.4th at 139; *accord Pine Hill*, 2026 WL 2178967, at *4.

***The Seventh Circuit.*** The Seventh Circuit reached a similar conclusion in *Baker*, where plaintiffs sued DuPont and others for allegedly "contaminat[ing] the property" around their residences with lead and arsenic. 962 F.3d at 939. DuPont removed, alleging that its production of freon for the federal government during World War II "resulted in waste streams that contained lead and arsenic." *Id.* at 945 n.3. The plaintiffs "purport[ed] to disclaim that their lawsuit [was] about" that government work, blaming DuPont's commercial operations instead. *Id.* at 945 & n.3. Holding that the disclaimer was ineffective, the Seventh Circuit explained that the dispute over the "products" that caused plaintiffs' "injuries" "[wa]s just another example of a difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3.

These decisions reflect different applications of a single rule: Courts "reject disclaimers that simply disavow any attempt to recover based on the defendant's indivisible federal conduct." *Yost*, 165 F.4th at 1008. Or, as the First Circuit has put it: "A disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Gov't of Puerto Rico*, 119 F.4th at 188; *see Pine Hill*, 2026 WL 2178967, at *5 (adopting this language).

This rule bars plaintiffs' supposed disclaimer. The district court's contrary conclusion defies recent Supreme Court precedent, is irreconcilable with this Court's decision in *Griffin*, and squarely contradicts a wealth of circuit-court decisions about PFAS disclaimers.

### C. The District Court's Contrary Ruling Rests On Discredited And Inapposite Caselaw.

Without the benefit of this Court's decision in *Griffin*—and without addressing the many other circuit-court decisions above—the district court concluded that plaintiffs' purported disclaimer

rendered 3M's federal-contractor defense "moot." App. 1670; R. Doc. 145, at 16. But the district court's cited authorities miss the mark.

For support, the court turned almost exclusively to unpublished, out-of-circuit district-court decisions—many of which have been abrogated by the circuit-court authorities discussed above. App. 1669–71; R. Doc. 145, at 15–17. *Maine*, for example, undermines the district-court decision in the First Circuit (*New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215 (D.N.H. 2023)).[6] *Baker* and *Raoul* undermine the district court decision in the Seventh Circuit (*Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756 (S.D. Ill. Nov. 23, 2015)). *See supra* p.61.

The sole appellate authority cited by the district court only confirms the court's error. App. 1670; R. Doc. 145, at 16. In *Raoul*, the State of Illinois sued 3M, alleging PFAS contamination from a

---

[6] Reviewing that district-court decision, the First Circuit recognized as much. Although it affirmed the remand order because "[t]he notice [of removal] was [] untimely," the court of appeals *agreed* that "the alleged presence of any commingling" of "non-AFFF PFAS and MilSpec AFFF PFAS" makes the case "plainly removable under 3M's theory of removability." *New Hampshire v. 3M Co.*, 132 F.4th 556, 563 (1st Cir. 2025) (emphasis omitted).

specific facility and disclaiming any relief for contamination from AFFF sources. 111 F.4th at 847–48. 3M removed, explaining that some of the alleged contamination could have come from MilSpec AFFF at a neighboring army arsenal. *Id.* The Seventh Circuit held that 3M's federal government-contractor defense remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination because "a factfinder would need to apportion the contamination" between the alleged sources. *Id.* at 848–49. And that task presents "'difficult causation question[s] that a federal court should . . . resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

The Seventh Circuit ultimately remanded the suit to state court, but for a very specific reason not applicable here. At oral argument on appeal, Illinois "clearly and unequivocally conceded . . . that it would not seek relief against 3M for mixed PFAS contamination." *Raoul*, 111 F.4th at 849. In other words, Illinois "expressly agreed that a factfinder w[ould] not need to apportion the PFAS contamination between sources." *Id.* For Illinois to recover given that extraordinary concession, the State agreed that the evidence would have to show that "100% of th[e] contamination" in a "designated

area" came "from the [3M] [f]acility" and that not "even a morsel of contamination" came from elsewhere. *Id.*

The district court's reliance on *Raoul* was misplaced for two reasons. *First*, "to the extent that *Raoul* can be read to defeat removal on the basis that a state court can decide whether there is any AFFF contamination"—"and thus any nexus to federal authority"—"at a site where the removing defendant has plausibly alleged commingling, the Seventh Circuit's holding conflicts with" this Court's decision in *Griffin*. *Maine*, 159 F.4th at 140 n.24. In *Griffin*, where the plaintiff *also* offered a concession "[a]t oral argument," this Court made clear that such concessions "do not and [can]not[] waive claims based on" "indivisibl[e]" injuries. 175 F.4th at 904–05; *see supra* p.60; *Maine*, 159 F.4th at 140 n.24 (noting the inconsistency between *Raoul* and the rule against "permit[ting] 'a state court to determine th[e] nexus'").

*Second*, plaintiffs have provided nothing close to *Raoul*'s "clear[] and unequivocal[]" not-one-morsel concession. 111 F.4th at 849. In fact, "it [was] not immediately clear [to the district court] whether" plaintiffs had made "an express waiver" *at all*. App. 1668;

R. Doc. 145, at 14. At most, plaintiffs disclaimed only "the right to claim damages relating to . . . MilSpec AFFF." App. 1669; R. Doc. 145, at 15. They certainly did not concede, as Illinois did, that their claims would be totally and forever "barred" if "even a morsel of [PFAS]" relating to the alleged injury could be traced to MilSpec AFFF exposure. *Raoul*, 111 F.4th at 849.

The district court appears to have recognized as much, noting that plaintiffs might (again) "'attempt[] to reverse course' to assert a claim based on exposure to MilSpec AFFF." App. 1671; R. Doc. 145, at 17. In those circumstances, the court continued, "3M [could] again seek removal." *Id.* But nothing in law or logic warrants this kind of jurisdictional jockeying, or the waste of judicial resources that comes with it.

This Court should apply its own precedent—and the cogent reasoning of its sister circuits—rather than the now-discredited decisions of various district courts. Because "3M's federal work is inextricably related to the charged conduct," this case belongs in federal court. *Maryland*, 130 F.4th at 391.

## CONCLUSION

This Court should reverse the remand order.

Dated: August 5, 2026

Respectfully submitted,

/s/ *Lauren R. Goldman*

Lauren R. Goldman
Justine Goeke
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
LGoldman@gibsondunn.com
JGoeke@gibsondunn.com

Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 777-9326
ASteene@gibsondunn.com

Paul D. Clement
Joseph J. DeMott
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
joseph.demott@clementmurphy.com
nicholas.aquart@clementmurphy.com

Joseph E. Barakat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
JBarakat@gibsondunn.com

*Counsel for Defendant-Appellant 3M Company*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,996 words, excluding portions exempted by Rule 32(f). It complies with the typeface and type-style requirements of Federal Rules 32(a)(5)(A) and (a)(6) because it has been prepared in 14-point, New Century Schoolbook font. This brief and the corresponding addendum comply with the virus-scan requirements of Eighth Circuit Rule 28A(h)(2) and are virus free.

Dated: August 5, 2026

Respectfully submitted,

By: /s/ *Lauren R. Goldman*
Lauren R. Goldman

*Counsel for Defendant-Appellant*
*3M Company*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2026, the foregoing brief, along with the accompanying addendum, was filed with the Clerk of Court for the U.S. Court of Appeals for the Eighth Circuit through the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: August 5, 2026

Respectfully submitted,

By: /s/ *Lauren R. Goldman*
Lauren R. Goldman

*Counsel for Defendant-Appellant*
*3M Company*